FILED
2017 Aug-17  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JERMAINE OSBOURNE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO:** |
| | ) | |
| | ) | |
| **DARLING INGREDIENTS D/B/A** | ) | **JURY DEMAND** |
| **BAKERY FEEDS,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

## I.  JURISDICTION AND VENUE

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343(4), and 28 U.S.C. §§2201 and 2202, 42 U.S.C. §2000e *et seq.*  This suit is authorized and instituted for race, color and national origin discrimination pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991," 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §§1981, 1983 and 1988.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. §2000 *et seq.* providing for injunctive and other relief against race and national origin discrimination in employment.  The plaintiff requests a trial by jury of all issues triable to a jury.

1

2.     Subject matter jurisdiction is established pursuant to 28 U.S.C. §1331 and venue is proper in this district pursuant to 28 U.S.C. §1391(b).

3.     The Plaintiff timely filed his charge of race, color and national origin discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days after the last discriminatory treatment on October 21, 2015 (Exhibit A).  The Plaintiff further filed his lawsuit within 90 days after receipt of his right-to-sue letter, originally issued by the EEOC on May 3, 2017, re-mailed on May 24, 2017, and received on May 26, 2017 (Exhibit B).

## II.   PARTIES

4.     Plaintiff, Jermaine Osbourne, is black, of African American descent and of Jamaican origin, is a legal permanent resident of the United States of America, and a resident of the State of Alabama.  At all relevant times, the Plaintiff was employed by Defendant, Darling Ingredients, Inc. d/b/a Bakery Feeds, and/or its predecessor or successor entities.

5.     Defendant, Darling Ingredients, Inc. d/b/a Bakery Feeds (hereinafter "Bakery Feeds"), is the entity and/or predecessor and/or successor company, that employed Plaintiff at all times relevant to this action.  Defendant employs at least twenty-five (25) persons.

III.   **FACTUAL ALLEGATIONS**

6.   Plaintiff, Jermaine Osbourne, is Black, of African American descent and is from Jamaica. Plaintiff is married to a U.S. Citizen, and legally works in the United States.

7.   On or about May 7, 2015, Jermaine Osbourne was hired through Personnel Staffing, Inc. to work onsite at Bakery Feeds as a Fleet Mechanic I, earning $10.00 per hour, and $15.00 per hour for overtime work. Plaintiff usually worked a minimum of 45 hours per week, and up to 55 hours per week.

8.   The fleet manager was Ian (White/Caucasian), and Jermaine Osbourne's direct supervisor was Charles Stevens ("Junior") (White/Caucasian). Ian told Mr. Osbourne at the time he was hired, and several times thereafter, that as long as he was willing to learn and had good attendance, they would train him and the job would be his to keep permanently.

9.    Plaintiff's co-workers included Austin (White/Caucasian) and John (White/Caucasian). Plaintiff was the only Black/African American Jamaican person working in fleet maintenance during the time he worked there.

10.   Nobody called Plaintiff by his name. Instead, they called him "Jamaican," "Pedro," or just whistled to get his attention.

11.   About 2 weeks after Plaintiff started, Junior and Austin started making offensive comments to and about Plaintiff. They called Plaintiff "slim

shady," and told Plaintiff that he must be the shortest person in Jamaica and that he must be the skinniest person in Jamaica. They told Plaintiff that he looked like a corpse: black and dead. They said the flies were drawn to Plaintiff because they thought he was dead, and "It's not the garbage they're drawn to: it's you." Junior said that Plaintiff cooked outside on the ground like Africans, and Austin asked Plaintiff if he used bathrooms with toilets. They also made jokes about black men's penis sizes. A co-worker asked if Plaintiff was living the American dream. One joke told was about Father's Day: they said that black kids are confused on Father's Day because they don't know who their father is.

12.     Plaintiff was offended by the daily joking and harassing.

13.     The harassment was severe and constant.

14.     Junior would assign Plaintiff to jobs that needed at least two people to do, but he wouldn't assign a second person to assist Plaintiff. When Plaintiff would be unable to do it without help, Junior would call Plaintiff "his girl" and say that Plaintiff was weak. He would say this in front of everyone, even though the other employees could not do the same job by themselves either. He humiliated and embarrassed Plaintiff frequently.

15.     When there was no work on the inside, Plaintiff would go looking for Junior in the truck yard to get his next assignment rather than wait around, but Junior would get mad at Plaintiff when he did this. He would yell at Plaintiff and

ball his fists up like he wanted to hit Plaintiff. Junior would get mad at Plaintiff if he finished his work and tried to help others, and would yell at Plaintiff for that.

16.     Junior didn't treat the other mechanics like he treated Plaintiff. When Plaintiff would go to write down a job and parts, Junior would whistle and yell loudly at him and ask if Plaintiff was sleeping. He would frequently take Plaintiff off mechanic jobs and make him sweep instead. When Plaintiff would write his job on his job sheet, such as sweeping for 3 hours, Junior would change it from 3 hours to .75 hours so management would think Plaintiff wasn't working. Junior refused to let Plaintiff write up his own job sheets because he wanted to change Plaintiff's times. Junior did not do this to any of the other employees he supervised, only Plaintiff. Junior was supposed to train Plaintiff to drive a truck, but he refused.

17.     Plaintiff would come back from lunch break early sometimes because he felt like he was a target and was worried Junior would make it appear that he wasn't doing my job. Junior yelled out in front of everyone, "if you don't take breaks or if you work overtime to finish a job, I'm not going to sign off on it."

18.     One day, Junior told Plaintiff to go fetch a tool called a "punch." He didn't tell Plaintiff what size to bring, so he brought two. Plaintiff gave him one, and Junior threw it back at Plaintiff in a rage. Luckily, it hit the wall behind Plaintiff or he would have been injured. After this incident, Plaintiff was not only humiliated; he was also scared and threatened by Junior's behavior.

19.     In June 2015, Plaintiff made a verbal complaint of discrimination and harassment to the PSI representative, Cassie. She put Plaintiff's complaint in writing and gave it to Ian at Bakery Feeds. Ian talked with the plant manager and a corporate HR person, asked Plaintiff some questions, and as a result, suspended Junior for 3 days.

20.     After Plaintiff made the complaint, no one on the job site would talk to him for a week. One co-worker wore sunglasses every day the following week. When Junior came back from his suspension, he continued to intimidate Plaintiff and refused to speak to Plaintiff. He would not tell Plaintiff what his assignments were; he conveyed Plaintiff's assignments through a co-worker. In one instance when a tool fell, Junior made the comment that he was glad he didn't throw it because he would be in trouble again.

21.     Shortly after Junior returned to work, in the beginning of September, Ian told Plaintiff that they had to lay him off "because they didn't have enough work for him to do." This was patently untrue, as all of the mechanics regularly worked overtime. There was another temporary employee working who hadn't been there as long as Mr. Osbourne (Ryan Yates, Caucasian/White/American) who was not laid off.

22.     Ian moved Plaintiff to a different department immediately, pending PSI finding Plaintiff a different assignment. The temporary position was for less money and less hours in the new department, and was essentially a demotion.

23.     The Monday after Plaintiff was moved into the other department, his job as a Fleet Mechanic I was posted up for bid, further evidence that the "lack of work" was not the real reason for Plaintiff's layoff.

24.     Shortly after this demotion, Plaintiff was given an assignment at a different company, where earned less than when he was working as a Fleet Mechanic I at Bakery Feeds.

25.     In truth, the reason Jermaine Osbourne was terminated by Bakery Feeds was because of his color, race and national origin, and/or in retaliation for complaining about discrimination based on his color, race and national origin.

26.     Upon information and belief, Plaintiff's position was filled by a Caucasian/White American.

## IV.   CLAIMS

**COUNT ONE**
**TITLE VII RACE, COLOR AND NATIONAL ORIGIN**
**HOSTILE WORK ENVIRONMENT**

27.     The plaintiff, Jermaine Osbourne, re-alleges and incorporates by reference paragraphs 1 through 26 with the same force and effect as if fully set out in specific detail hereinbelow.

28.     Plaintiff has been discriminated against on the basis of race, color and national origin in regard to disparate treatment, harassment, hostile work environment, and other adverse terms and conditions of employment, in violation of Title VII of the Civil Rights Act, as amended.   The plaintiff has been discriminated against because of his race, color and national origin and has been subjected to disparate treatment, hostile work environment, intimidation, and harassment because of his race, color and national origin. Said actions on the part of his employer were severe and pervasive and tended to interfere with plaintiff's ability to perform his job.

29.     Plaintiff seeks to redress the wrongs alleged herein and this suit for back pay plus damages, interest, an injunctive and declaratory judgment are his only means of securing adequate relief.   Plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

<u>COUNT TWO</u>
<u>TITLE VII RACE, COLOR AND NATIONAL ORIGIN</u>
<u>DEMOTION AND TERMINATION</u>

30.     The plaintiff, Jermaine Osbourne, re-alleges and incorporates by reference paragraphs 1 through 26 with the same force and effect as if fully set out in specific detail hereinbelow.

31.     Plaintiff has been discriminated against on the basis of race, color and national origin in regard to demotion and termination, and other adverse terms and conditions of employment, in violation of Title VII of the Civil Rights Act, as amended.  The plaintiff has been discriminated against because of his race, color and national origin and has been subjected to wrongful and/or pretextual termination because of his race, color and national origin. Said actions on the part of his employer were severe and pervasive and tended to interfere with plaintiff's ability to perform his job.

32.     Plaintiff seeks to redress the wrongs alleged herein and this suit for back pay plus damages, interest, an injunctive and declaratory judgment are his only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT THREE
## §1981 RACE AND NATIONAL ORIGIN DISCRIMINATION

33.     The plaintiff, Jermaine Osbourne, re-alleges and incorporates by reference paragraphs 1 through 26 with the same force and effect as if fully set out in specific detail hereinbelow.

34.     Plaintiff has been discriminated against on the basis of race and national origin in regard to disparate treatment, hostile work environment, termination, and other adverse terms and conditions of employment, in violation of

9

42 U.S.C. §1981.  The plaintiff has been discriminated against because of his race and national origin in violation of 42 U.S.C. §1981 and has been subjected to unequal treatment, hostile work environment, intimidation, harassment, and wrongful and/or pretextual termination because of his race. Said actions on the part of his employer were severe and pervasive and tended to interfere with plaintiff's ability to perform his job.

## COUNT FOUR
## RETALIATION

35.    The plaintiff, Jermaine Osbourne, re-alleges and incorporates by reference paragraphs 1 through 9 and 19 through 26 with the same force and effect as if fully set out in specific detail hereinbelow.

36.    Charles "Junior" Stevens retaliated against the Plaintiff after Plaintiff complained of race and color discrimination and engaging in federally protected activity, adversely affecting the terms and conditions of Plaintiff's employment, including failure to enforce the company's anti-discrimination/harassment policy, adverse job action, demotion and termination.

37.    The defendant, Bakery Feeds, is vicariously liable for retaliation because Charles "Junior" Stevens was the plaintiff's supervisor, who was charged with investigating and implementing the defendant's anti-discrimination policy, but who instead ignored the anti-discrimination policy, personally violated the any anti-discrimination policy, and retaliated against Plaintiff by refusing to speak with

him or direct his employment, demoting him and terminating him. The defendant is liable for violating the proscription against discrimination on the basis of race and color found in Title VII.

38.    Plaintiff seeks to redress the wrongs alleged herein and this suit for back pay plus damages, interest, an injunctive and declaratory judgment are his only means of securing adequate relief.   Plaintiff is now suffering and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

V.    **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after a trial:

1.    Issue a declaratory judgment that the employment policies, practices, procedure, conditions and customs of the Defendant is volatile of the rights of the Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.*, and 42 U.S.C.§1981.

2.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII of

the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. §2000e *et seq.*, an d 42 U.S.C. §1981.

3.     Enter an order requiring the Defendant to make the Plaintiff whole by awarding him the position he would have occupied in the absence of race, color, and/or national origin discrimination, back-pay (plus interest), front pay, punitive damages, compensatory damages, nominal damages, liquidated damages, declaratory relief, injunctive relief, and benefits.

4.     The Plaintiff further prays for such relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

Respectfully submitted,


s/Michael E. Auffenorde
Michael E. Auffenorde
Attorney for Plaintiff

OF COUNSEL:
**MICHAEL E. AUFFENORDE, P.C.**
2409 Commerce Court, Suite B
Huntsville, Alabama 35801
(256) 533-5383
(256) 533-4833 facsimile
aalaw@bellsouth.net

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY**


s/Michael E. Auffenorde
Michael E. Auffenorde


**PLAINTIFF'S ADDRESS:**

JERMAINE OSBOURNE
c/o Michael E. Auffenorde, P.C.
2409 Commerce Court, Suite B
Huntsville, Alabama 35801

**DEFENDANT MAY BE SERVED AT:**

DARLING INGREDIENTS, INC. D/B/A BAKERY FEEDS
c/o CT Corporation System
2 N Jackson St, Ste 605
Montgomery, AL 36104